UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID MOWETT,**

       **Plaintiff,**

v.

Case No. 15-12612
Hon. Denise Page Hood

**JPMORGAN CHASE BANK, N.A**

       **Defendant.**

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO EXTEND TIME TO FILE AMENDED COMPLAINT

**I.   INTRODUCTION**

This matter comes before the Court on Defendant JPMorgan Chase's ("Chase")  motion to dismiss (Doc. # 7) to which Plaintiff David Mowett ("Mowett") responded (Doc. # 19). Also before the Court is Plaintiff's motion to extend time to file Amended Complaint (Doc. # 12) to which Defendant responded (Doc. # 13). The Court had a hearing on this matter on November 18, 2015.

**II.   BACKGROUND**

On October 17, 2005 Mowett obtained a loan in the amount of $273,000.00 from Washington Mutual Bank ("WaMu") secured by a mortgage. In 2008, WaMu failed and Chase acquired the Mortgage and Loan. The Mortgage was assigned to

Chase, who recorded it on June 12, 2012 in the Oakland County Records.

On November 1, 2011, Mowett entered into a loan modification agreement with Chase. The agreement purported to lower Mowett's payments. Chase alleges that Mowett contacted Chase claiming his payments were too high under the new loan agreement. Upon investigation, Chase discovered that it had misapplied $32,516.60 to the unpaid principal balance of the loan, rather than applying that amount to the negative escrow balance. According to Chase around June 2012, it informed Mowett that it had remedied this error. Chase says despite correcting this error, Mowett continued to allege that his loan modification was boarded incorrectly. Chase claims Mowett stopped making payments on the loan and as a result Chase began foreclosure proceedings.

Chase later cancelled the foreclosure proceedings and reinstated Mowett's loan. On September 1, 2014, it informed Mowett that regular payments would be due; however, according to Chase, Mowett failed to make payments. In October 2014, Chase informed Mowett he needed to make payments to avoid a default, but Mowett still failed pay. Consequently, Chase began foreclosure proceedings.

Mowett's complaint is a bit confusing, however, it appears he is claiming that Chase knowingly mishandled his account and failed to disclose material inaccuracies. Mowett claims after he entered into the loan modification he began to

receive monthly statements that were inconsistent with the loan modification agreement. Mowett says he contacted a research specialist at Chase, who claimed the information in Mowett's account was correct. Mowett continued to communicate with the research specialist and other representatives from Chase regarding irregularities with his loan. From 2012 to 2014, Mowett says he corresponded with various individuals regarding errors and inconsistencies in his account. Despite repeated requests, Chase failed to provide Mowett with an accurate account balance. Mowett claims he spoke the research specialist eventually disclosed account inaccuracies and told Mowett that Chase knowingly mishandled his account and intended to foreclose on his property. Mowett also says the Specialist informed him that Chase representatives were ignoring requests for information regarding inconsistencies in Mowett's account. Mowett says a representative from the Executive Resolution Team described the inaccuracies as a "big mess" and "completely misled [Mowett] and did a number on [him], but claimed that Chase "does not need [Mowett's] signature or any consent to alter your loan in any way Chase prefers."

  It is unclear exactly when Chase began foreclosure proceedings, but in June 2014, Mowett says Chase reinstated his loan. However, his account statements still contained errors such as an escrow deficiency and alleged accounting shortages.

Mowett says in early 2015 Chase reinitiated foreclosure proceedings and he was advised in April 2015 that a foreclosure sale would occur in May 2015. It appears that Mowett and Chase engaged in mediation, but the mediation was unsuccessful. Mowett says despite the failed mediation, a senior counsel at Chase assured Mowett that "as long as Chase is negotiating with Mowett in mediation or litigation a Sheriff sale will never go forward." (Doc. # 1-2 pg. 16). Mowett claims he has various documents and telephone recordings verifying that Chase mishandled his account.

On July 13, 2015, Mowett filed suit alleging: (1) breach of contract; (2) fraud; (3) conversion; (4) wrongful foreclosure; (5) intentional infliction of emotional distress; (6) civil conspiracy and violation of RICO; and (7) injunctive and declaratory relief. Chase timely removed Mowett's complaint to federal court and filed a motion to dismiss. In the motion to dismiss Chase claims that: (1) breach of contract claim fails because he breached the loan agreement first by failing to make payments; (2) fraud claim fails because it was not pled with the requisite particularity; (3) conversion claim fails because there is a valid creditor debtor relationship; (4) wrongful foreclosure claim fails because no foreclosure has taken place; (5) infliction of emotional distress claim fails because such claims are not cognizable when the relationship is contractual; (6) conspiracy claim fails

because conspiracy by itself is not a cause of action and the civil RICO claim fails because Mowett failed to alleged a pattern of acts that satisfies the definition of racketeering activity; and (7) injunctive and declaratory relief claims fail because those are not causes of actions but rather remedies.

**III.   Chase's Motion to Dismiss**

    **A.   Pro Se Litigants Pleading Standard**

Pleadings drafted by *pro se* litigants are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, this "less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations. A failure to identify a right, privilege or immunity that was violated merits dismissal of the cause of action for failure to state a claim upon which relief can be granted." *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004)

    **B.   Standard of Review for Motion to Dismiss**

In general, a complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ...claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, as a result of *Twombly*, a complaint must "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When a complaint is challenged under Rule 12(b)(6), a court must construe the complaint "in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Although the court primarily considers the allegations in the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir.2001).

Dismissal under Rule 12(b)(6) is warranted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

### B.     Mowett's Breach of Contract Claim

Mowett claims Chase breached the loan agreement by (1) charging unauthorized fees and costs; (2) failing to properly account for plaintiff's payments; (3) misapplying payment of (P&I) and Escrow; (4) filing a wrongful

foreclosure; (5) failing to provide accurate repayment and reinstatement figures; (6) failure to accurately respond to plaintiff's written correspondence and disputes; (7) failure to release an accurate accounting of plaintiff's loan; and (8) failure to conduct its affairs in good faith.

Chase contends Mowett cannot sustain a breach of contract claim because he breached the loan agreement first by failing to make payments. It also asserts that he does not identify a specific clause of the contract that was allegedly breached and he cannot prove that he sustained any damages.

Mowett failed to establish a breach of contract claim. First, Mowett failed to make a showing of the damages element. To establish a breach of contract, the claimant must show: (1) there was a contract; (2) the other party breached the contract; and (3) the party claiming a breach of contract suffered damages as a result of the breach. *Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 955 (E.D. Mich. 2014).

Mowett applied for a loan modification that was granted. Unfortunately, Chase committed errors regarding the allocation of funds to either the escrow or the principal; however, after years of constant contact, Chase reinstated the loan taking it out of default and making it current to June 3, 2014. (Doc. # 7-7). Chase essentially wiped the slate clean as if none of the confusion had ever happened.

Mowett was informed of his ability to have a clean start, and informed that his next payment would be due in September 2014. Since the account was reinstated and made current, the foreclosure was cancelled, and Chase corrected the deficiency regarding the allocation of Mowett's payments, it is unclear what damages Mowett sustained in regards to his mortgage and loan modification. Regarding damages, Mowett asks for compensatory, special, and exemplary damages, including damages for emotional distress. At the November 24, 2015 hearing, when asked what Mowett wanted as a remedy, he stated that he wanted a to have a trial against Chase. After further questioning from the Court regarding a remedy, he stated that he wanted to keep his home. But, if the loan was made current, and the foreclosure cancelled, it appears that any potential monetary damages have been rectified. Regarding damages for emotional distress, as explained later, that claim fails.

     Further, Mowett does not identify the specific provisions of the contract that Chase allegedly breached through its conduct. In addition to alleging the elements of a breach of contract claim, a plaintiff must also identify the specific provisions of the contract that was allegedly breached. *Thill*, 8 F. Supp. 3d at 955. While Mowett's ordeal was unfortunate and understandably frustrating, Mowett does not identify any provisions of the mortgage or the loan modification agreements that support any of his claims for breach. For instance, Mowett fails to state which

contract provision was breached that gives rise to his "failure to accurately respond to plaintiff's written correspondence and disputes" claim. He also fails to provide the provision that supports his "failure to release an accurate accounting of plaintiff's loan" claim. Mowett did not direct the Court to any language in the mortgage or loan agreement that requires Chase to provide Mowett with an accounting. Without identifying the exact provisions that were allegedly breached, the Court cannot determine if Chase actually breached the contract.

And finally, some of Mowett's alleged breach of contract claims are not viable. For instance, his failure to provide an accounting claim is not viable. See, *West v. Wells Fargo Bank, N.A.*, No. 2:12-CV-13572, 2013 WL 3213269, at *6 (E.D. Mich. June 26, 2013) ("an accounting is an extraordinary, equitable remedy that is not permitted when a remedy at law is available and, moreover, is inappropriate in cases regarding amounts due under a contract, such as a note or mortgage."). Mowett's "failure to conduct its affairs in good faith" claim is also unsustainable. Michigan law allows a plaintiff to pursue a breach of implied covenant of good faith and fair dealing by way of a breach of contract if "one party to the contract makes its performance a matter of its own discretion." *Dietrich v. Bell, Inc.*, 554 F. App'x 418, 424 (6th Cir. 2014). In this case, Mowett does not identify any provision in his mortgage or loan modification agreement that allows

Chase the ability to perform at its own discretion. See also, *Goodwin v. CitiMortgage, Inc.*, No. 1:12-CV-760, 2013 WL 4499003, at *7 (W.D. Mich. Aug. 19, 2013)

Mowett's breach of contact claim is dismissed.

### C. Mowett's Fraud Claim

Mowett claims Chase engaged in fraud by manipulating and fabricating billing statements and altering escrow payments. He also alleges that Chase sent communications indicating that the fraudulent charges were valid and claims Chase falsely reported frivolous and unverified information to credit bureaus.

> To sustain an action for fraud in Michigan a plaintiff must show:
> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555 (2012). Under the Federal Rules of Civil Procedure, Federal Rule of Civil Procedure 9(b) requires a claimant to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Accordingly, a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *DBI Investments, LLC v. Blavin*, No. 14-1398, 2015 WL 1379680, at *10 (6th Cir. Mar. 26, 2015). In

addition, the claimant must identify the identity of the person who made the alleged misrepresentations. *Hoover v. Langston Equip. Associates, Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

As written, Mowett failed to allege fraud with the requisite particularity. Mowett does not identify who made the alleged misrepresentations, when these misrepresentations were allegedly made, what the misrepresentations were, and where these alleged misrepresentations took place.

At the November 24, 2015, hearing, Mowett stated that the factual basis for his fraud claim is laid out in the proceeding paragraphs of his Complaint, which provide a factual overview of his case. (Doc. 1-2 at 10 - 26).

Even after reading the factual basis, including alleged statements made by "Chase representatives" to Mowett such as, "Chase just kept giving you the runaround, dropping the ball over and over pass you off to other departments who kept misrepresenting information to you," (Doc. 12 - at 12), Mowett's claim still fails for the same reason that his breach of contract claim fails; he cannot prove he suffered injury since the alleged injury has been rectified. His loan was reinstated and he was informed that his first payment was due in September 2014.

For the reasons stated above, Mowett's fraud claim is dismissed.

**D.     Conversion Under M.C.L. 600.2919a**

Mowett has asserted a claim for conversion under M.C.L. 600.2919a. Only personal property may be the subject of an action for conversion. *Collins v. Wickersham*, 862 F. Supp. 2d 649, 656 (E.D. Mich. 2012). Consequently, Mowett cannot sustain a conversion claim because his dispute involves real property.

### E. Wrongful Foreclosure

Mowett says Chase committed a wrongful foreclosure by "initiating a foreclosure actions (sic) against plaintiffs (sic) while being aware the contract upon which action is based is severely flawed and unconscionable."(Doc # 1-2 at 27). Chase asserts that this claim is not ripe because foreclosure proceedings have not occurred.

Mowett's wrongful foreclosure claim is not ripe for review. To challenge a foreclosure a party must identify fraud or irregularity in the foreclosure procedure resulting in prejudice towards preserving the mortgagor's property interest. *Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 210-11 (2014). Mowett claims foreclosure proceedings have begun, but states that Chase agreed to stay those proceedings pending litigation. (Doc. # 1-2 at 16). Chase claims that no foreclosure sale has taken place. (Doc. # 7 at 19). Therefore, Mowett cannot demonstrate any fraud resulting in prejudice relating to a foreclosure procedure because Chase has not officially foreclosed on the property. Mowett's injury of

facing a wrongful foreclosure has not occurred. "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 560 (6th Cir. 2008). Since Chase has yet to foreclose on Mowett's property, his wrongful foreclosure claim must be dismissed without prejudice.

### F.  Infliction of Emotional Distress

Mowett claims Chase's actions have caused Mowett "extreme stress and emotional distress." (Doc. # 1-2 at 27). Chase contends Michigan does not recognize claims for emotional distress where the relationship at issue is a contractual.

To sustain a claim for infliction of emotional distress a plaintiff must allege: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 824-25 (6th Cir. 2012). A defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Under Michigan law, damages for emotional distress are not recoverable in breach of contract or foreclosure actions. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 415 (1980); *Robbins v. Mortgage*

*Elec. Registration Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443, at *8 (W.D. Mich. Nov. 9, 2009). Since Mowett's infliction of emotional distress claim is based on his contractual relationship with Chase, his infliction of emotional distress will be dismissed for failure to state a claim.

### F. Conspiracy and Civil RICO Claim

Mowett claims Chase:

> [C]onspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained inter alia, and caused damages to Plaintiff by engaging in fraudulent activities.

(Doc. # 1-2 at 28). It is unclear whether Mowett is claiming Chase conspired to violate the 18 U.S.C. § 1961 et seq, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), or if he is alleging conspiracy by itself. Either way, Mowett's conspiracy and RICO claims fail. Mowett's conspiracy claim fails.

If he is pleading conspiracy alone, then the claim fails because "[a]n allegation of civil conspiracy, standing alone, is not actionable." *Cousineau v. Ford Motor Co.*, 140 Mich. App. 19, 37 (1985). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003) aff'd, 472 Mich. 91 (2005). And he has pled no sustainable tort in

14

his Complaint.

If predicated on RICO, the claim fails because Mowett has failed to establish a RICO claim.

18 U.S.C.§ 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To prevail on a RICO cause of action, a plaintiff must establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity[1]." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).

To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a "pattern of racketeering activity[2]" consisting of at least two predicate acts of racketeering activity occurring within a ten-year period.

---

[1] RICO defines "racketeering activity" to include "any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 [18 U.S.C. § 1341] (relating to mail fraud), section 1343 [18 U.S.C. § 1343] (relating to wire fraud)." *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 352 (6th Cir. 2008).

[2] Rico states that "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years. 18 U.S.C. § 1961(5); however, the Supreme Court notes that legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern" . . . "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Sedima,*, 473 U.S. at 497.

18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses "which are indictable" under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1).

In Mowett's complaint, he says:

> Chase's scheme and artifice to defraud in which Chase deprived money and plaintiffs (sic) property by means of false or fraudulent pretenses/ representations. Chase's use of the mails or interstate wire communications in furtherance of their schemes. Under RICO, Chase's enterprises need not have a hierarchical structure or chain of command , members of the group need not have fixed roles. "the (sic) group need not have a name, and *the enterprise may engage in "sprurts of activity* punctuated by periods of quiescence.

(Doc. # 1-2 pg. 34).

It appears from his complaint that Mowett is claiming Chase used interstate communications, such as mail and wire communications to commit fraud. To sustain his RICO claim Mowett must allege specifically identify a pattern of racketeering activity. "Consistent with Rule 9(b), RICO plaintiffs must allege the time, place and contents of the misrepresentations." *Moon*, 465 F.3d at 723. Mowett failed to plead at least two predicate acts of mail fraud with the requisite particularity; he has not alleged the time, place, or contents of any alleged acts of mail or wire fraud.

Consequently, Mowett failed to plead factual content that allows the Court to draw a reasonable inference that Chase is liable for the racketeering misconduct alleged. Mowett's complaint must contain "plausible statements as to when, where,

in what, or by whom," *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), the statements Chase made in furtherance of its alleged racketeering conduct. Otherwise, Mowett is simply pleading an "unadorned, the-defendant-unlawfully-harmed me accusation," *Iqbal*, 556 U.S. at 678.

Mowett's RICO claim is dismissed.

The Court having examined all of Mowett's claims **GRANTS** Defendant's Motion to Dismiss for failing to state a claim.

### IV. MOWETT'S MOTION TO EXTEND TIME TO FILE AMENDED COMPLAINT

Mowett filed a motion seeking leave to amend his complaint. (Doc. # 12). Chase responded in opposition, claiming that any amendment by Mowett would be futile.

Under F.R.C.P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and, the court should "freely give leave when justice so requires." Grounds for denying leave to amend include "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile if "the amendment could not withstand a rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir.

17

2012).

"Normally, a party seeking an amendment should attach a copy of the amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). A "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is ... not a motion to amend." *Id*. In other words, simply requesting leave to amend without providing details as to what and how the party will amend the complaint is insufficient. And, a court does not abuse its discretion in denying a threadbare motion to amend. See, *id*.

In Mowett's motion to amend, he does not attach a copy of the proposed amended complaint and he fails to identify which counts he intends to amend. Without this information the Court cannot determine if his Complaint would be futile. Accordingly, the motion is **DENIED**.

## V. CONCLUSION

Defendant's Motion to Dismiss (Doc. # 7) is **GRANTED**; Plaintiff's Complaint (Doc. # 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Motion to Extend Time to File Amended Complaint (Doc. # 12) is **DENIED.**

**IT IS ORDERED.**

        S/Denise Page Hood
        Denise Page Hood
        Chief Judge, United States District Court

Dated: March 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2016, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager